UNITED STATES DISTRICT COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| **MARLON K. SPEARS,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | **2:08CR136-PPS** |
| **v.** | ) | **2:13CV447-PPS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Marlon K. Spears has filed a motion pursuant to 28 U.S.C. § 2255 to vacate or set aside his felony conviction and 60-month sentence for growing marijuana in his basement and being a felon in possession of a firearm. In his extensive, 149-page motion Spears advances numerous arguments, most of which claim ineffective assistance of counsel. Some of his arguments are more coherent and fully formed than others. Ultimately, Spears' § 2255 motion is largely an attempt to re-litigate long-settled issues. Because none of Spears' claims establishes a persuasive reason why his sentence should be vacated or set aside, his motion is denied.

## BACKGROUND

In detailing the necessary background information, I will draw primarily from the transcript of the June 14, 2010, *Franks* hearing, my opinion and order dated June 28, 2010, on Spears' motion to suppress based in part on that *Franks* hearing, and the transcript of Spears' sentencing held on October 4, 2010. (*See* DE 147, 101, 153.)

Spears ran a hydroponic marijuana growing operation out of the basement of his Northern Indiana home. (DE 153 at 19-21.) On August 1, 2008, Agent Nicole Duncanson from the Gang Related Investigations Task Force (GRIT) obtained a warrant to search Spears' home, citing an affidavit containing information from a confidential source, a trash-pull investigation conducted the day before, and data from electric company NIPSCO detailing excessive monthly electricity usage at the home. (DE 101 at 1.) The confidential source claimed to know Spears had a grow operation in his basement. (DE 1 at 3.) The trash-pull investigation turned up a fresh marijuana stem and paraphernalia used in grow operations – a quantity of gray plastic discs cut from a utility tote, packaging for an aquarium bubble stone, and packaging for an aquarium heater. (DE 1 at 3-4.) Agents believed the discs came from a tote modified to work as starter holder for marijuana seedlings. Hydroponic marijuana farmers use the aquarium products to help fertilize young plants. The electricity data indicated abnormally high monthly kilowatt usage for a home of that size. (DE 1 at 4-5.)

On August 6, 2008, state and federal law enforcement officers executed the search warrant. (DE 52 at 2.) In Spears' basement, officers found 555 marijuana plants in various stages of development, along with the requisite supplies needed to maintain and process the plants. (DE 153 at 19-20.) During the same search, law enforcement officers recovered a loaded .22 caliber rifle, hundreds of rounds of .22 caliber ammunition, and 9mm ammunition. (DE 1 at 5-6.)

Based on the evidence recovered from Spears' basement, the Grand Jury eventually indicted Spears on charges of possessing 100 or more marijuana plants with intent to distribute in violation of 21 U.S.C. § 841(a)(1); being a felon in possession of a firearm in violation of 18 U.S.C. §922(g) and 924(a); and maintaining a place for the manufacture and distribution of a controlled substance in violation of 21 U.S.C. § 856. (DE 10, 61.) Prior to trial, the government dropped a separate charge of possession with intent to distribute. (*See* DE 68, 71.)

Before trial Spears filed a motion to suppress evidence obtained from the search. (DE 35, 52.) Initially, I denied Spears' motion without holding a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978), because he failed to make the requisite "substantial preliminary showing" that the affidavit contained false statements made knowingly and intentionally, or with reckless disregard for the truth. (DE 52; DE 101 at 2.)

This changed in May 2010, during the pretrial conference, when the government tendered new documents to Spears' counsel. (DE 101 at 2.) Contrary to the content of the warrant affidavit, one of the new documents, an FBI report of interview prepared by Agent Duncanson, stated that she received the electricity usage information from an FBI agent, and not from a NIPSCO employee as she had stated in the affidavit. (*See* DE 73-2; DE 101 at 2.) Another of the documents called into question the propriety of the FBI agent's acquisition of the electricity information from NIPSCO. (DE 73-5; DE 101 at 2.)

Because the documents raised the possibility of inaccuracies in the warrant affidavit, I conducted a *Franks* hearing on June 14, 2010.

Attorney John Martin represented Spears at his *Franks* hearing, as well as at trial. At the *Franks* hearing, Martin provided a list of witnesses he intended to call, including state and federal law enforcement officers as well as a NIPSCO employee. (DE 147 at 7.) Martin conducted comprehensive examinations of each witness, highlighting several inconsistencies between witness testimony and portions of the affidavit. (*See* DE 101 at 4-8; *see also, e.g.*, DE 147 at 25, 108-10, 144-49.)

Despite Martin's extensive examination of each witness, none of the inconsistencies unearthed at the hearing convinced me that the affidavit contained any false statements made knowingly and intentionally, or with a reckless disregard for the truth. At the conclusion of the *Franks* hearing, I orally denied Spears' motion to suppress (DE 147 at 193), and a written order followed. (DE 101.)

Spears' case went to trial, and a jury convicted him on all three counts. (DE 148, 149, 150.) I sentenced Spears to the mandatory minimum sentence of 60 months' imprisonment followed by a four-year term of supervised release. (DE 130; DE 153 at 26.) At sentencing, I remarked that the mandatory minimum sentence was a harsh one given the circumstances. I further remarked that had I not been bound by the mandatory minimum, I would have sentenced Spears to a shorter term of incarceration. (DE 153 at 25.)

After his sentencing, Spears filed a timely appeal to the Seventh Circuit, arguing that I erred in denying his *Franks* motion. The Seventh Circuit affirmed Spears' conviction, holding that the "district court did not clearly err in finding no *Franks* violation with respect to statements made about the marijuana stem discovered in the trash and existence of piping at Spears's home." *United States v. Spears*, 673 F.3d 598, 601 (7th Cir. 2012.) After the Supreme Court denied Spears' petition for writ of certiorari on October 1, 2012, Spears filed his § 2255 (it was apparently initially lost in the mail, so I allowed him to re-file it). (DE 162; DE 163; DE 164.)

In challenging his conviction by way of a § 2255 motion, Spears argues that violations of his Fifth, Sixth, and Fourteenth Amendment rights require me to vacate or set aside his sentence. Primarily, Spears argues that he was denied effective assistance of counsel before the district court and the Seventh Circuit via various acts and omissions in violation of the Sixth Amendment. (DE 164 at 61-97: Spears grounds 7-16.) Many of Spears' arguments are substantially similar to one another, and some are less fully formed than others. At times, the motion reads like a diary of various periods of the investigation through trial, from 2008 to 2010. Where necessary, I will condense some of his arguments in the interest of a more straightforward analysis.

## DISCUSSION

A motion filed under § 2255 allows a federal prisoner to attack his sentence on the grounds that it was "imposed in violation of the Constitution or the laws of the United States, . . . or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a).

Relief under § 2255 is available only in extraordinary circumstances. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633–34, (1993)). To prevail, the movant must show a constitutional or jurisdictional error, or some elemental problem leading to an outcome contrary to the furtherance of justice. *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992).

Spears grounds most of his § 2255 claims in the Sixth Amendment which requires that criminal defendants be provided effective assistance of counsel at all stages of the proceeding against them. *Cates v. Superintendent*, 981 F.2d 949, 952 (7th Cir. 1992) (citing *Strickland v. Washington*, 466 U.S. 668 (1984); additional citation omitted). To prevail on his claims, Spears must establish (1) that his lawyer's performance fell below an objective standard for reasonably effective representation, and (2) that the deficient performance caused Spears prejudice. *Blake v. United States*, 723 F.3d 870, 879-80 (7th Cir. 2013) (citing *Strickland*, 466 U.S. at 687-88). However, "[t]o avoid the distortive effects of hindsight, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (quoting *Strickland*, 466 U.S. at 690) (quotation marks omitted). Obviously the ultimate "effective defense counsel," in at least a colloquial sense, will be one who obtains acquittal, but that can't be required in the legal standard for effective assistance.

To succeed on the first element, Spears must show some specific acts or omissions that fall below an objective standard of reasonableness and which could not

have been the result of professional judgment. *Makiel*, 782 F.3d at 897; *see also*, *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Taking context and circumstances into consideration, I will evaluate whether those specific acts or omissions fall "outside the wide range of professionally competent assistance." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). My evaluation recognizes that lawyers do not have a duty to raise every argument or frivolous defense. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (quotation removed). In other words, I cannot Monday morning quarterback Martin's independent legal judgment or strategic choices. *Blake*, 723 F.3d at 879.

As for the second element, Spears must show that he suffered prejudice as a result of ineffective counsel. *Strickland*, 466 U.S. at 690. This means that Spears must show a reasonable probability that, but for Mr. Martin's errors, the results of Spears' trial would have been substantially different. *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). The Seventh Circuit defines reasonable probability as one that is sufficient to undermine confidence in an outcome. *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).

It's important to note that I am calling Spears' two required showings "first" and "second" for convenience, but they need not be analyzed in that order, and it may be appropriate to end the analysis if I find there was no prejudice to Spears:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack

of sufficient prejudice, which we expect will often be so, that course
should be followed.

*Strickland*, 466 U.S. at 697; *see also Berkey*, 318 F.3d at 772. Prejudice amounts to the

highest and hardest hurdle. *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). It

is one thing for counsel to make a mistake, it is an entirely different thing for that error

to prejudice the defendant.

Spears claims that his trial counsel performed ineffectively at the *Franks* hearing

on June 14, 2010. Primarily, a *Franks* hearing allows a defendant the chance to challenge

the veracity of statements made in support of a search warrant. *Franks v. Delaware*, 438

U.S. 154, 155-56 (1978).  In order to prevail in a *Franks* hearing, the defendant must

show, by a preponderance of the evidence, that the warrant affidavit contains perjury or

statements made with reckless disregard for the truth. *United States v. Daoud*, 755 F.3d

479, 486 (7th Cir. 2014) (Rovner, J., concurring); *McDonald*, 723 F.2d at 1292 (citing

*Franks*, 438 U.S. at 155-56). If the defendant meets this burden, the false statements are

set aside. *Franks*, 438 U.S. at 155-56. If the remaining statements in the affidavit are not

enough to support probable cause, then the entire warrant is deemed invalid and the

search made under its authority is void. *Id.*

With that background, I will review Spears' arguments:

**1.  It wasn't ineffective assistance not to call a cannabis expert.**

 Spears first claims that he received ineffective assistance of counsel because

Martin did not consult with or retain an expert witness. Spears argues that Martin

should have retained an expert in the cultivation of cannabis to refute the testimony of

law enforcement officers who testified in part based on experience in drug

investigations. (DE 164 at 17.) Attached to his motion, Spears includes an affidavit from

a cannabis expert he apparently contacted independently after his conviction. The

purported expert claims that evidence recovered from the July 31, 2008, trash-pull does

not support a determination of probable cause. (DE 164 at 136-40.) For starters, whether

evidence is enough to establish probable cause is a legal judgment not a factual one.

In any event, the Seventh Circuit has considered whether the failure to call an

expert witness rises to the level of ineffective assistance of counsel. *Valenzuela v. United

States*, 261 F.3d 694, 699-700 (7th Cir. 2001). *See also United States v. Balzano*, 916 F.2d

1273, 1294 (7th Cir. 1990). "A lawyer's decision to call or not call a witness is a strategic

decision generally not subject to review." *Valenzuela*, 261 F.3d at 699-700 (holding it was

not ineffective assistance not to call a chemist to dispute identification of cocaine,

adding "we are unsure what, if any, added value the proposed [expert] witness would

have added"). Nothing in the constitution requires an attorney to call each and every

suggested witness. *Valenzuela*, 261 F.3d at 700; *Balzano*, 916 F.2d at 1294. I may find that

ineffective assistance was rendered only when a lawyer's decision not to call a witness

falls outside the bounds of reasonable professional judgment. *Balzano*, 916 F.2d at 1294-

95.

From my review of the cannabis expert's affidavit, Martin's decision not to call

Spears' proposed cannabis expert was a sound strategic decision well within the

bounds of reasonable professional judgment. Spears' cannabis expert only takes issue with the government's use of the aquarium supplies packaging and plastic discs discovered in the trash-pull as evidence supporting the search warrant. (DE 164 at 136-38.) His main argument is that those objects can be used — in fact, usually are used — for purposes other than growing marijuana. So, what? The fact that the items may have a benign purpose does not mean they cannot also have a nefarious one.

The expert never addresses the presence of a marijuana stem in Spears' trash, or the fact that grow operations frequently discard the stems. (DE 1 at 3-4.) Moreover, the expert does concede that Spears could have used the items recovered from the trash-pull in a hydroponic marijuana growing operation. (DE 164 at 138 ¶ 15.) If the point is that the items *may* have had nothing to do with growing marijuana, it seems like overkill to hire a marijuana expert. This is especially so since the transcript of the *Franks* hearing establishes that Martin vigorously examined the law enforcement personnel who conducted the trash-pull.

Martin questioned Agent Duncanson about the evidence recovered in the trash-pull, how the marijuana stem was discovered, how the aquarium products are often used for legal purposes, and the lack of other physical evidence of a growing operation. (DE 147 at 69-111.) Martin also questioned Trooper Sample, and further established that Spears could have purchased the aquarium products at a pet store for legal purposes. (DE 147 38-66.) Finally, Trooper Sample conceded that the trash did not contain any other evidence of a grow operation, such as fertilizer, packaging for grow

cubes, or grow light boxes. (*Id*.) In relevant part, Martin's extensive examinations elicited from law enforcement agents the same information that the cannabis expert would have provided. Calling the cannabis expert to talk about other hypothetical uses for the items evidenced by the trash would have been cumulative, to the extent it was relevant at all.

Because the expert's testimony would not have offered any new information, deciding not to call the expert falls well within the bounds of reasonable professional judgment. It certainly wasn't a patently unreasonable strategic legal decision. And in all events, the cannabis expert's affidavit leaves me convinced that such an expert's testimony was in no way crucial to the defense's theory of the case. Thus, Spears suffered no prejudice from Martin's strategic decision not to call a cannabis expert.

### 2. Spears' attorney didn't ineffectively investigate or examine witnesses.

Spears next advances a melange of additional ineffective assistance of counsel claims related to the *Franks* hearing and Martin's alleged failure to properly investigate government evidence and conduct thorough examinations of government witnesses. (DE 164 at 20-36.) Some of Spears' claims are repetitive and others are less than fully formed. In relevant part, Spears alleges that 1) Martin did not familiarize himself with belated government disclosures concerning Spears' criminal history and the electricity usage data from the warrant affidavit; 2) Martin failed to prove a reckless disregard for the truth on the part of Agent Duncanson; and 3) Martin failed to conduct an adequate cross examination of Trooper Sample and other law enforcement officers during the

*Franks* hearing. (DE 164 at 20, 24 and 31 Spears grounds 2, 3, and 5.) Spears essentially asks me to decide yet again on the sufficiency of the probable cause to support the initial search warrant for his home. Spears advanced all of these substantive claims on direct appeal, and the Seventh Circuit rejected all of them. *See Spears*, 673 F.3d at 605-08.

All of Spears' assertions contradict the record. During the *Franks* hearing, Martin's examinations of Agent Duncanson, a NIPSCO employee, and Investigative Analyst Randal Strapon indicate an exhaustive knowledge of the electricity usage data. (DE 147 at 106-09, 126-35, 137-39, 143-49, 161-67.) Likewise, Martin's examination of Trooper Sample indicates a precise familiarity with the reporting done on Spears' criminal history. (DE 147 at 23-24, 26-28, 39-46, 58-60, 86-90, 101-02.) The record establishes that Martin investigated the belated government discovery, familiarized himself with the electricity usage data, and conducted extensive examinations of adverse witnesses. In any event, the Seventh Circuit held on direct appeal in this case that "even if those portions [of the warrant addressing electricity usage information and Spears' criminal history] are stricken, the remaining elements of the affidavit support a finding of probable cause." *Spears*, 673 F.3d at 601.

Spears also convolutedly argues that Martin failed to prove Agent Duncanson's reckless state of mind or establish that she perjured herself during the *Franks* hearing. (DE 164 at 31, 35.) Spears takes issue with Duncanson's reliance on incorrect information from the confidential source as the basis for her investigation. (DE 164 at 51-55.) In relevant part, Spears seems to have wanted Martin to ask Agent Duncanson

-12-

more questions about the origin of surveillance photographs of Spears' home showing something that appeared to be PVC piping, but was not. (DE 164 at 31-33.) (The Seventh Circuit specifically held that there was no *Franks* violation with respect to the statements made in the warrant about "the existence of piping at Spears's home." *Spears*, 673 F.3d at 601.) All of Spears' assertions are attempts to re-litigate settled issues from the *Franks* hearing and trial. (*See* DE 101.) He provides no new evidence in support of his bare, conclusory claims. He merely takes issue with Martin's method of pursuing the issues. On direct appeal, the Seventh Circuit addressed these issues and rejected Spears' claims. *Id.*

Spears also generally quarrels with the fact that the affidavit takes some liberties in explaining exactly how Agent Duncanson obtained certain pieces of information. (*See, e.g.*, DE 164 at 23.) But this is alleviated because Agent Duncanson did not claim to have investigated the case by herself. As I noted in my Order based on the *Franks* hearing, she denied any such claim explicitly by writing "[t]he information contained in this affidavit is based upon my firsthand knowledge and the information provided by other law enforcement officers and witnesses." (DE 101 at 5-6 (citing DE 35-2).) As the *Franks* hearing transcript indicates, Martin skillfully examined Agent Duncanson. Spears cannot advance an ineffective assistance of counsel argument simply because he would have examined Agent Duncanson in a different way. Spears wants me to second-guess Martin's sound, strategic decisions. I decline to do so because

Spears offers no evidence that Martin's representation fell below an objective standard of reasonably effective representation.

### 3.  Attorney Martin investigated and presented Spears' claims of violations of the 5th and 14th Amendments.

Spears next claims that Martin provided ineffective assistance of counsel in failing to "properly investigate and present" contentions that the government violated his Fifth and Fourteenth Amendment rights by targeting him for investigation on the basis of his race. (See DE 164 at 37-60 Spears ground 6; and DE 164 at 106-108 Spears' ground 19.) To simplify, Spears contends that the government singled him out for federal investigation on the basis of his race, while neglecting to investigate white Indiana marijuana growers.

However, Spears' argument is far more convoluted than a straightforward selective prosecution claim. Citing an Indiana case, *Litchfield v. State*, 824 N.E.2d 356, 364 (Ind. 2005), Spears asserts that state authorities lacked the requisite "articulable individual suspicion necessary" to conduct a search of his trash. (See DE 164 at 37-60 Spears ground 6; and DE 164 at 106-108 Spears ground 19.)  Spears contends that, to circumvent Indiana law, officers fabricated a connection between Spears and the Black P Stones street gang to trigger an investigation by federal authorities. (*Id.*) I find this claim entirely without merit. This is not the first time Spears has made these allegations. Attorney Martin advanced this argument in a pre-trial supplemental motion

to suppress. (DE 69 at 2-4.) As I wrote in denying the motion, I was not convinced the State initiated the investigation into Spears, and even if it did, Agent Duncanson did have "articulable individualized suspicion," so the warrant and trash-pull would have passed muster under Indiana law just as they did under federal law. (See DE 101 at 2-3.) Of course, this discussion of the trial record highlights a key deficiency in Spears' current ineffective assistance of counsel argument: at Spears' request, Martin investigated, briefed, and argued the selective prosecution issue before trial. Spears may believe he could have done a better job presenting the point, but that is a far cry from ineffective assistance of counsel.

Even so, I'll briefly address the merits of Spears' selective prosecution claim one more time. To establish selective prosecution, Spears would have had to prove that the FBI's criminal investigation had both a discriminatory purpose and a discriminatory effect. *United States v. Goulding*, 26 F.3d 656, 662 (7th Cir. 1994) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). Moreover, in order to unlock the doors of discovery with respect to selective prosecution, Spears would have had to allege facts sufficient to show he had a colorable claim. *Goulding*, 26 F.3d at 662; *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir. 1990). In other words, Spears must present some evidence "tending to show the essential elements" of selective prosecution. *Heidecke*, 900 F.2d at 1159.

Spears does not allege facts sufficient to show that the government initiated the investigation for a discriminatory purpose, nor does he provide evidence of a discriminatory effect. Spears lists five Indiana state marijuana cases that involve white Indiana residents suspected of drug activity whose trash was pulled. (DE 164 at 38.) He also cites Indiana state marijuana cases involving Trooper Sample, apparently because he does not trust Trooper Sample, and wanted Martin to argue that "Trooper Sample was recruited because of his . . . willingness to fabricate evidence to establish probable cause." (DE 164 at 60.) (In fact, Martin did pursue that line of questioning extensively. (*See* DE 147 at 26-27, 38-46, 60.))

Apart from his conclusory allegations, he offers no evidence to support the essential elements of the selective prosecution claim. Agent Duncanson, Agent Clark, and Officer Michalak were all federally deputized during the period of the investigation. (DE 147 at 85.) This was a federal investigation. Spears' support for his claim amounts to arguing that Indiana occasionally investigates white marijuana growers, and Indiana courts sometimes find searches to be invalid. But this offers nothing in support of a claim that the federal government targeted Spears on the basis of racial animus.

### 4. Spears' attorney did prepare and present exculpatory and impeachment evidence.

Spears next argues that Martin provided ineffective assistance of counsel because he failed to properly present exculpatory and impeachment evidence during the *Franks*

hearing. (DE 164 at 28-36, 74: Spears Grounds 4, 5, 10.) Again, Spears' bare, conclusory

claims are meritless. First, Spears argues that Agent Duncanson kept a set of

handwritten notes which, when compared with the affidavit, would show subtle

fabrications. (DE 164 at 52.) He fixates on semantic issues, like the difference between

"at least 100 marijuana plants" and "over 100 marijuana plants" (DE 164 at 54), and the

fact that some investigators collected the trash for the trash-pull, spread out the trash

contents on a truck bed, then another investigator identified the plant stem as marijuana

without actually having gathered the trash in the first place (DE 164 at 29-30). Second,

Spears believes that law enforcement officials planted the evidence recovered from his

trash on July 31, 2008. (DE 164-1 at 31-34.) He claims that, prior to the trash-pull, Agent

Duncanson and Trooper Sample visited his residence to plant the evidence later

recovered. (*Id.*)

The transcript of the *Franks* hearing directly contradicts each of Spears'

assertions. Prior to Agent Duncanson's first conversation with the confidential source

on July 23, 2008, Agent Duncanson had no knowledge of Spears whatsoever. (DE 147 at

13-14, 70-71, 75-76.) Agent Duncanson's notes were admitted into evidence during the

*Franks* hearing, and Martin thoroughly examined Agent Duncanson about them. (DE

147 at 78-82.) I reviewed those notes during the *Franks* hearing and see no merit to

Spears' assertion that they offer any impeachment evidence. Further, testimony

concerning the trash-pull from multiple law enforcement personnel also contradicts

Spears' assertion about planted evidence. (*See* DE 147 at 15-17, 31-36, 48-53, 57, 75-77, 84,

91-100.) Finally, Spears offers no evidence in support of his claim that law enforcement planted evidence, and even admits he cannot prove it. (DE 164-1 at 31.)

To successfully state a claim for ineffective assistance of counsel, Spears must show some specific act or omission that amounts to ineffective assistance. *Trevino*, 60 F.3d at 338. If there was no specified additional exculpatory or impeachment evidence for Martin to present, then he cannot have provided ineffective assistance by failing to present nonexistent evidence. Simply put, Spears does not raise any act or omission which constitutes ineffective assistance of counsel. The Seventh Circuit has been clear that an attorney is not required to make frivolous arguments that his client suggests (indeed, an attorney's ethical obligation to the court prevents him from making frivolous arguments).

Spears also alleges that Martin provided ineffective assistance in failing to call two witnesses to present impeachment evidence during the *Franks* hearing. (DE 164 at 74: Spears ground 10.) Spears believes Martin should have called Hammond Police Sergeant John Adams and FBI Supervisor Special Agent Elena Iatarola. Spears believes their testimony would have undermined Agent Duncanson's credibility. (DE 164 at 75.) Spears' motion is vague on exactly what Agent Iatarola and Sgt. Adams knew about Agent Duncanson's investigation, but he thinks they would have shown that the investigation into Spears' marijuana grow operation originated with State law enforcement. From what I can gather from Spears' motion, the pair would only have repeated information about the electricity data, notes, and confidential source – which

information Martin gleaned from his examination of Agent Duncanson. (DE 164 at 75-79.)

While there is of course precedent in the Seventh Circuit holding that an attorney's failure to investigate and call exculpatory witnesses amounts to ineffective assistance of counsel, Spears' claims are readily distinguishable from those cases. *See, e.g., Washington v. Smith*, 219 F.3d 620, 631-32 (7th Cir. 2000); *Williams v. Washington*, 59 F.3d 673, 681 (7th Cir. 1995); *Harris v. Reed*, 894 F.2d 871, 878-79 (7th Cir. 1990); *Sullivan v. Fairman*, 819 F.2d 1382, 1389, 1391-92 (7th Cir. 1987). The above cases all involve a prosecution heavily reliant on eyewitness testimony, and the defendant's counsel either failed to cross-examine the state's witnesses, or failed to contact or call plainly exculpatory eyewitnesses (like an alibi witness). Unlike Spears, the defendant in each of those cases was able to show how the omitted evidence would have helped his case.

Martin made the reasonable strategic decision to not to call witnesses whose testimony would only repeat information already in the record, and who seem to have been only peripherally involved in this investigation. Again, I can only review that decision if it falls outside the bounds of reasonable professional judgment. *Balzano*, 916 F.2d at 1294. Because Sgt. Adams and Agent Iatarola would not have added any new information, Martin made an entirely reasonable, strategic decision not to call them based on his professional judgment.

**5. Spears didn't receive ineffective assistance of counsel with respect to investigation of the confidential source.**

Spears next advances two confusing claims concerning Martin's alleged failure to properly investigate and impeach the government's confidential source during the *Franks* hearing. (DE 164 at 61 and 80-83: Spears ground 7 and 11.) The record directly contradicts these claims – Attorney Martin asked witnesses about the confidential source at length during the *Franks* hearing. Again, Spears is merely attempting to re-litigate old issues using old arguments. He may be frustrated that Martin's questioning was constrained in order to protect the source's identity, but that does not evidence ineffective assistance.

As a review, Spears first attempted to challenge the credibility of the government's confidential source in his initial motion to suppress. (*See* DE 35.) In denying that motion, I found the confidential source credible. (DE 52 at 8-9.) When considering the credibility of a confidential source, I must take into account "(1) whether the informant personally observed the events, (2) the degree of detail included in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and the application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citations omitted). Nothing introduced in the *Franks* hearing or Spears' § 2255 motion brings me to reconsider my initial ruling on the source's credibility.

Ineffective assistance of counsel requires that Spears suffer some prejudice from his attorney's deficient performance. *Strickland*, 466 U.S. at 690. This requires that Spears establish a reasonable probability that, but for Martin's errors, the proceeding would have had a different result. *Id.* at 694. Even if we assume Marin erred here (which I don't believe to be the case), establishing that the confidential source worked for the government would not have changed the result of the *Franks* hearing. So Martin's alleged deficiency does not give rise to a reasonable probability that the proceedings would have come out differently. Spears cannot succeed on this ineffective assistance of counsel claim.

Spears also argues that Martin should have objected to portions of testimony that bolstered the credibility of the confidential source. (DE 164 at 64: Spears Ground 8). Spears views Agent Duncanson and IA Strapon's testimony about the confidential source to be "unreliable and uncorroborated hearsay." (*Id.*) Spears seems to disbelieve that Duncanson, accompanied by the confidential source, drove by his home, nor does he believe that his dogs prevented Duncanson from conducting more detailed surveillance of his home. (DE 164 at 64-67.) He also believes that, had Martin conducted a thorough investigation, I would not have credited IA Strapon's testimony that he received the electricity information from a NIPSCO source. (DE 164 at 62-63.) Spears wanted Martin to object to Agent Duncanson and IA Strapon's statements during the *Franks* hearing.

The problem for Spears here is that Martin's examinations of Agent Duncanson and Randall Strapon *did* elicit the testimony in question. (DE 147 at 75-76, 144-146.) Martin's questions show that he had reviewed the materials from the government, and he was prepared to ask about them. Martin's line of questioning was appropriate given the defense's concerns over the affidavit. Ineffective assistance of counsel requires that Spears show some specific act or omission that falls below an objective standard of reasonably effective representation. *Makiel*, 782 F.3d at 897. Spears does not make the required showing. Instead, he attempts to challenge the reasonable strategic decisions made by his counsel during the course of an examination. I won't "Monday-morning quarterback" Martin's reasonable strategic decisions. *Id*.

### 6. Spears' claim that his defense was hindered by a conflict of interest is completely unsupported.

Spears alleges that he received ineffective assistance of counsel because Martin failed to disclose a conflict of interest. (DE 164 at 68 Spears: Ground 9.) Spears asserts that Martin canceled a subpoena into the disciplinary records of the officers involved in the trash-pull because the government sent an email threatening the Federal Community Defenders. (DE 164 at 68-69.) Specifically, Spears claims he "was informed about an 'e-mail' sent to the (FCD) office from [the prosecutor] threatening to never give the (FCD) office another favorable plea agreement if they 'ever tried to pull a stunt like that again.'" (DE 164 at 68.) Spears believes the email prevented Martin from effectively investigating a potential conspiracy that led to the trash-pull. (Id.)

Petitioners may choose one of two ways to show ineffective assistance of counsel due to a conflict of interest. One way, through *Strickland*, requires that the petitioner show a potential conflict of interest and that the potential conflict of interest prejudiced the petitioner. *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (citing *Strickland,* 466 U.S. at 692-93). The other path, delineated in *Cuyler v. Sullivan*, requires the petitioner to show that an "actual conflict of interest adversely affected his lawyer's performance." *Hall*, 371 F.3d at 973; *see also Stoia v. United States*, 22 F.3d 766, 770-71 (7th Cir. 1994) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). Under either test, prejudice is assumed where the petitioner can show an actual conflict of interest. *Hall,* 371 F.3d at 973.

Spears cannot succeed via either path. Spears cannot show an actual conflict of interest, nor can he show prejudice from a potential conflict of interest.  Spears' allegation of a threat leveled against the Federal Community Defenders is a completely unsupported allegation. Spears does not provide any record of the alleged email, nor an explanation of how he came to learn of it. Second, Martin's vigorous examination of law enforcement personnel at the *Franks* hearing does not support the presence of a potential conflict of interest. And, as the exhibits Spears attaches to his § 2255 briefing show, the government provided Martin the information he sought via the subpoena anyway.  (DE 164-1 at 33, 55.)  So, even if Spears could show a potential conflict of interest, Martin actually received the information in question before trial, in time to use it, and Spears therefore suffered no prejudice.

7.    **Spears' appellate attorney didn't provide ineffective counsel.**

Spears lists several grounds upon which he claims that he received ineffective assistance from his appellate counsel. Spears believes that his appellate counsel should have presented on direct appeal several of Spears' claims about the ineffective assistance of Spears' trial counsel. (DE 164 at 98-112.) Spears' claims about appellate counsel parallel his claims against Martin. For example, in Ground 1, Spears argues that Martin was ineffective for failing to retain and call a cannabis expert. (DE 164 at 17.) In Ground 20, Spears argues that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for failing to retain and call an expert witness. (DE 164 at 109.) In the end, Spears does not persuade me that his appellate counsel rendered him ineffective assistance.

Generally, the *Strickland* standard governs ineffective assistance of appellate counsel claims, with one important caveat. *Makiel*, 782 F.3d at 897. The petitioner's bar rises even higher when his challenge is aimed at the selection of issues to appeal. *Id*. Appellate counsel does not have to present every non-frivolous claim on behalf of his client. *See Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). An appellate advocate's process of narrowing issues to present only the strongest on appeal is often the "hallmark of effective advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986).

Spears' appellate counsel did not provide ineffective assistance by opting not to raise every non-frivolous claim on direct appeal. Spears' appellate counsel's selection of the strongest issues for direct appeal indicates prudent legal advocacy, not ineffective

assistance of counsel.  Spears' ineffective assistance of appellate counsel claims

therefore fail.

Spears also argues that his appellate lawyer should have raised ineffective

assistance claims on direct appeal. But such an approach is inadvisable:

> [I]n the event the defendant pursues his claim on direct appeal and
> it is rejected, our decision will be binding on the district court
> through the law of the case doctrine, leaving defendant with the
> unenviable task of convincing the district judge that he should
> disregard our previous ruling. That is why we have often cautioned
> that a defendant who presents an ineffective-assistance claim for
> the first time on direct appeal has little to gain and everything to
> lose.

*United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995) (quotation marks omitted,

quoting *United States v. South*, 28 F.3d 619, 629 (7th Cir. 1994)); s*ee also United States v.*

*Peleti*, 576 F.3d 377, 383 (7th Cir. 2009). Raising ineffective assistance on direct appeal

prevents the defendant from building a factual record in support of the argument – he's

stuck with the facts as they stood and appeared to the trial court when he was

convicted. *Id.* It's therefore unlikely that appellate counsel's failure to raise ineffective

assistance claims on direct appeal will, in itself, demonstrate ineffective assistance by

appellate counsel.

In this case, Spears' appellate counsel made the sound strategic decision to leave

the ineffective assistance claims to a habeas petition, where Spears could flesh out the

arguments with evidence of trial counsel's ineffectiveness, should there be any such

evidence.  Raising the issue on direct appeal would have been a no-win situation for Spears.

<u>CONCLUSION</u>

Even if all of Spears' allegations were true, he still does not allege facts sufficient to entitle him to relief. At best, Spears alleges disagreements with his lawyers' legal strategy, but the facts remain the same, and the outcome would have been the same – Spears was not prejudiced. Because Spears has not alleged facts that, if proven, would entitle him to relief, I decline to grant an evidentiary hearing. 28 U.S.C. § 2255(b).


ACCORDINGLY:

 For all the foregoing reasons, Marlon K. Spears' Motion to Vacate under 28 U.S.C. § 2255 (DE 164) is **DENIED** and this case is **DISMISSED**.

**SO ORDERED.**

ENTERED: September 8, 2015

<u>/s/ Philip P. Simon</u>
**Chief Judge**
**United States District Court**